IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN MICHAEL ROLPH, II | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-15-2499 |
| WARDEN, Balt. Co. Det. Center, *et al.* | * | |
| Defendants | * | |

***

# MEMORANDUM

Pursuant to 42 U.S.C. § 1983, the self-represented plaintiff, John Michael Rolph II, filed a civil rights action on August 24, 2015, against the "Warden of Baltimore County Detention Center and two others to be named later (Correctional Officials)." ECF 1 at 1.[1] The named defendant filed a motion to dismiss or, in the alternative, for summary judgment. ECF 11. It is supported by a legal memorandum (ECF 11-1) (collectively, the "Motion") and numerous exhibits. Plaintiff opposes the motion. ECF 14 ("Opposition"). No reply was filed by defendant, and the time to do so has expired.

Plaintiff has also filed correspondence in this case, most of which constitutes inquiries as to the status of this case. *See* ECF 15 – ECF 18. The most recent correspondence, however, includes a self-represented complaint regarding events at Spring Grove Hospital, where Rolph is now located, naming Dr. Sabba as a defendant. ECF 19 at 3 – 11.[2] That complaint is unrelated to

---

[1] Defense counsel explains that there is no "Warden" for the Baltimore County Detention Center. Rather, Director Deborah Richardson, on behalf of whom the Motion is filed, holds the equivalent position. ECF 11 at p. 1. The Clerk will be directed to substitute Deborah Richardson, Director, for "Warden" as the listed defendant on the docket.

[2] Citations to page numbers refer to the pagination as it appears on the court's electronic filing system.

the instant case. Therefore, I will direct the Clerk to open a new civil case for processing of the claims stated therein.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated below, defendant's Motion shall be construed as one for summary judgment and shall be granted.

## I.    Factual Background

Rolph alleges that on February 28, 2015, during the intake process at the Baltimore County Detention Center ("BCDC"), two correctional officers used a box cutter to slice through the laces on his shoes without first asking him to remove the laces voluntarily.[3]  He claims the officers used "brute strength" to slice the laces, causing the box cutter blade to slice through his shoe and into the top of his foot. ECF 1 at 3. According to Rolph, a camera that was stationed four feet over his head captured the entire event. He describes the resulting injury to his right foot as "an incision . . . about a half an inch deep" (*id*.) and "two inches long." *Id*. at 5.[4] Further, Rolph maintains that he did not offer any resistance, but the "officer was totally out of control" (*id*. at 4), and that it took one month for the wound on his foot to heal. *Id*. at 5. He adds that he has a permanent scar on his right wrist because the handcuffs he was wearing at the time of the incident were too tight and the officer would not adjust them. *Id*.

---

[3] The records reflect that Rolph arrived at BCDC on January 28, 2015. *See*, *e.g.*, ECF 11-7. Indeed, Rolph reported the date of January 28, 2015, in his internal complaint, discussed *infra*. *See* ECF 11-2.

[4] Rolph asserts varying descriptions of the alleged injury to his foot. For example, he claims that he laceration was three inches deep (ECF 1 at 3); a half inch deep "in circumference" (ECF 1 at 3); and two inches "in circumference . . ." (ECF 1 at 4). The size of the wound is not material to the Motion.

Rolph's Complaint contains three counts. In Count I, he alleges that the actions he described constitute negligence. In Count II, he alleges assault and battery. And, in Count III, Rolph alleges failure to properly train the officers involved. *Id*.

The record shows the process used by BCDC when an inmate arrives at the facility. Upon arrival at BCDC, an inmate is placed in the intake holding cell and the transporting officer remains with the inmate until BCDC staff reviews the commitment paperwork and conducts an inventory of the inmate's personal property and money. ECF 11-9 (Affidavit of Lt. Darlene Dixon), ¶ 6. During the period of time that the inmate is in the holding cell, he is asked if he has any injuries. *Id.* ¶ 7. If an injury is reported, a triage nurse is called to the cell to assess the injury and take further appropriate actions if necessary. *Id.* If no injury is reported or discovered, the inmate is "medically cleared to be accepted into the facility[.]" *Id.* ¶ 8. ECF 11-9 (Affidavit of Lt. Darlene Dixon), at 2-3.

When no injuries are reported on arrival, and the inmate is accepted into BCDC, he is searched, shown a video regarding rules in the facility, and permitted to make two five-minute phone calls. New inmates are provided with an inmate uniform as well as shoes and other essentials, such as sheets, a blanket, a cup, a spoon, toothpaste, deodorant, and an inmate handbook.

Notably, the triage nurse then conducts an intake screening. Following that screening, the inmates are taken to the medical section of the facility, where they are examined by a physician's assistant before being placed in diagnostic housing. ECF 11-9, ¶¶ 8-11. All of the stated procedures were followed in Rolph's processing into BCDC. *Id.* ¶ 12.

Deborah Richardson, the Director of BCDC, asserts in her Motion that Rolph was processed into BCDC as an inmate at about 1:12 a.m. on January 28, 2015. *See*, *e.g.*, ECF 11-1

3

at 10; ECF 11-9 (Dixon Affidavit), ¶ 1.  No injuries were reported by Rolph at the time of his arrival.  *See* ECF 11-9.  However, six months later, on June 28, 2015, Rolph sent Inmate Request Form #118 to Richardson (ECF 11-2), alleging that he was assaulted on January 28, 2015, and that the corrections officers used a box cutter to cut off his shoelaces, injuring his foot.  *Id.*; *see also* ECF 11-9, ¶¶ 2-3.  Further, Rolph claimed that the incident had been captured on video and that he was "vigilant enough to take off [his] shoe so the camera would see the contusions on [his] foot."  ECF 11-2.  Rolph references informing his lawyer about the alleged event; that his mother is a politician; and that he intended to contact the media "for coverage . . . ."  *Id*.  He also demanded both "compensation of just cause" and to have his parole violation "discharged promptly."  *Id*.  Rolph warned that, "[a]s you know the longer I stay in here the longer you get sued for just compensation, and my reciprocities are due now."  *Id*.

Lt. Darlene Dixon was assigned the task of investigating Rolph's internal complaint.  She has been employed by BCDC since 2001, and was promoted to Lieutenant in 2010.  ECF 11-9 at 2.  Dixon explains in her Affidavit that the video surveillance of Rolph's admission into BCDC, which he has requested, was no longer available for review by the time of his request, due to the amount of time that elapsed between the date of the alleged event (January 28, 2015) and the date of his request (June 28, 2015).  ECF 11-9 at 4, ¶ 13.

Lt. Dixon's investigation included an inquiry made with Physician's Assistant Mason, who reviewed Rolph's medical records prepared at the time of his admission.  *Id*. ¶ 18; *see also* ECF 11-6 (correspondence from Captian Luckett to Richardson, dated 7/10/15) and ECF 11-7 (medical records).  These records indicate that, following Rolph's encounter with the correctional officer who searched him, no injuries were observed, nor did Rolph complain of any injuries.  *Id*.

In addition, Lt. Dixon's investigation revealed that at 8:52 a.m. on January 29, 2015, approximately six hours after Rolph had arrived at BCDC, a report was prepared by Classification Supervisor Parrish indicating that a mental health provider advised that Rolph was psychotic and needed to be moved to the Mental Health Housing Unit. *Id*.; *see also* ECF 11-9 at 5, ¶ 17. Rolph was transferred to Spring Grove Hospital on July 1, 2015. ECF 11-9 at 5, ¶ 15. Because of Rolph's transfer to Spring Grove Hospital, Dixon could not interview plaintiff as part of her investigation. ECF 11-9, ¶ 19.

Rolph's records indicate that on arrival at BCDC he was placed in a holding cell and seen by a triage nurse at 1:43 a.m., after his personal belongings (grey pants, grey sweatshirt, grey sneakers, and used multicolored paper) were removed from his possession. ECF 11-7 (medical records); ECF 11-4 (Inmate Property Intake form). A physician's assistant subsequently checked Rolph's pulse at the carotid, femoral, and pedal (or foot) points. ECF 11-7 at 9 ("Vascular" section). Additionally, Rolph's extremities were examined and described as normal. *Id*. at 10 ("Extremities" section). Rolph does not explain how the medical examination could have missed the kind of wound to Rolph's foot that he described in his Complaint.

## II.     Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).. However, under Rule 12(b)(6), a court, in its discretion, may consider matters

outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment

ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

As indicated, plaintiff has asked for "footage" from the video monitors on the date of his intake at BCDC. *See* ECF15 at 1. However, as noted, that footage is no longer available, according to the Affidavit of Lieutenant Dixon. *See* ECF 11-9. Moreover, plaintiff has not filed an affidavit under Rule 56(d). I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment, as it will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). But, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of

9

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment to the Constitution are coextensive with those provided to prisoners under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "'[D]ue process rights of a pretrial detainee are *at least* as great as the eighth amendment protections available to the convicted prisoner.'" *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (quoting *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988)) (emphasis added in *Hill*); *see also Riley v. Dorton*, 115 F. 3d 1159, 1167 (4th Cir. 1997) (recognizing that pretrial detainee's Fourteenth Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right).

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the

response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation. *Id.* at 38. But, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

In his Opposition, Rolph maintains that his shoe was deliberately cut open with a box cutter. He also contends that his complaint should not be dismissed due to the failure to name the two officers involved in the incident because the second signature is not legible on the form. ECF 14; *see also* ECF 11-4 (Inmate Property Intake Form). Further, Rolph states that he "kept [his] mouth shut about the incident initially because of a cover up." ECF 14 at 1. He offers no further explanation about an alleged cover up, such as who was responsible for it or whether he was in any way intimidated into silence. Rather, Rolph remains focused on the video surveillance that no longer exists.

Ordinarily, the absence of dispositive evidence that was in the sole control of a party might raise suspicion. However, suspicion is unwarranted in this case. Rolph waited six months to notify officials at BCDC of his allegation that his foot was purposely injured. This is the reason the video surveillance no longer exists.

Notably, there is no objective evidence as to the use of excessive force. Indeed, the objective evidence, such as medical records made contemporaneously with Rolph's arrival at BCDC, are to the contrary; they do not show any injury to Rolph. Therefore, even if the two correctional officers involved in searching Rolph during the intake process had been named and served in this case, they would be entitled to judgment in their favor, given the absence of any evidence of wrongdoing on their part.

Rolph's claim against Director Richardson for failure to train correctional officers also fails.  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).  Supervisory liability under §1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Where, as here, there is no objective evidence that Richardson's subordinates engaged in any wrongful behavior, it follows that she is not liable.  Bolstering that conclusion is the undisputed fact that Rolph's internal complaint was investigated promptly and thoroughly.

### IV.   Conclusion

Defendants are entitled to summary judgment in their favor.  A separate Order follows.


<u>April 26, 2016</u>           _____/s/_____
Date                    Ellen L. Hollander
                        United States District Judge